UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NICHOLAS J. KRAATZ,

                                    Plaintiff,

                                                        Case # 16-CV-00103-FPG

v.

                                                        DECISION AND ORDER

USAA CASUALTY INSURANCE CO.,

                                    Defendant.

## INTRODUCTION

This case is about a contract dispute.  Nicholas J. Kraatz ("Plaintiff") entered into a homeowner's insurance agreement ("the Policy") with USAA Casualty Insurance Company ("Defendant").  During the life of that agreement, a snow storm hit Western New York and Plaintiff's home was damaged.  Sometime later, Plaintiff reported the damage to Defendant and pursued a claim for insurance coverage.  Defendant conducted an investigation and subsequently denied Plaintiff's claim.  Plaintiff alleges that, in denying his claim, Defendant breached their contract.  Defendant disagrees.

Whether Defendant breached the contract is not the question currently before the Court because Plaintiff also alleges fraud, constructive fraud, negligent misrepresentation, and violation of New York General Business Law § 349.  ECF No. 1.  Plaintiff also seeks punitive and consequential damages as well as declaratory and injunctive relief.  *Id.*  In response to Plaintiff's complaint, Defendant moved to dismiss Plaintiff's allegations of fraud, constructive fraud, negligent misrepresentation, violation of New York General Business Law § 349, Plaintiff's requests for consequential and punitive damages,  and Plaintiff's request for injunctive

1

relief.  ECF No. 7.  In his response to Defendant's motion to dismiss, Plaintiff moved for summary judgment on his claim for declaratory relief.  ECF No. 10.  For the reasons stated below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.  Plaintiff's motion for summary judgment is DENIED.

## BACKGROUND

Because the Court is faced with a motion to dismiss and a motion for summary judgment, some parsing of the facts is required.  A motion to dismiss tests the sufficiency of the complaint. *See* FED. R. CIV. P. 12(b)(6).  To that end, the Court must accept the factual allegations articulated in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  Conversely, a motion for summary judgment tests the sufficiency of the evidence.  *See* FED. R. CIV. P. 56(a).  When ruling on a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In doing so, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

## I.      Plaintiff's Factual Allegations

On December 17, 2013, Plaintiff entered into a one-year contract for homeowner's insurance with Defendant.  ECF No. 1-1.  The Policy covered, among other things, certain "named perils" including "[w]eight of ice, snow or sleet, which causes damage to property contained in a building."  *Id.* at 30; ECF No. 1, ¶57.  The Policy conditioned coverage on Plaintiff's performance of certain duties, including "promptly notify[ing] [Defendant] or

[Defendant's] agent of the loss" and "keep[ing] an accurate record of repair expenses."  ECF No. 1-1, 41.

From November 17, 2014 to November 19, 2014, five to seven feet of snow an ice accumulated throughout Western New York.  ECF No. 1, ¶9.  On November 19, 2014, the chimney on Plaintiff's home, the door on Plaintiff's garage, and the roof on Plaintiff's shed collapsed under the weight of that snow and ice.  *Id.* at ¶11.  Through the hole left by the collapsed chimney, snow and ice began to accumulate inside Plaintiff's home.  *Id.*  Over the next three days, the temperature in Western New York rose to 60 degrees.  *Id.* at ¶¶10, 12.  That temperature increase caused the snow and ice that had accumulated inside Plaintiff's home to melt.  *Id.* at ¶12.  When the water came into contact with electrical wiring, circuits shorted and fires ignited.  *Id.* at ¶13.

Twelve days after his property was damaged, Plaintiff called Defendant's customer service number to notify Defendant of the damage.  *Id.* at ¶16.  During that call, Plaintiff spoke to a claims representative for 14 minutes.  *Id.*  Despite the Policy language that indicated Defendant would cover the cost of damage caused by the weight of snow and ice, the claims representative informed Plaintiff that his claim would be denied.  *Id.* at ¶17.  The claims representative said that the damage to his garage might be covered, but the damage to his home would not be.  *Id.*  Further, the claims representative told Plaintiff that because of his high deductible, "it would not be in [his] best interest to pursue a claim at that time."  *Id.* at ¶18.

Plaintiff took the claim's representative's advice and did not pursue a claim at that time. *Id.*  Instead, he took out a second mortgage on his home to cover the costs of the repairs.  *Id.* at ¶21.  On November 5, 2015, the principal balance on the second mortgage was $173,041.78.  *Id.*

at ¶21.   On November 6, 2015, the cost of repairs totaled $171,873.24 and the expenses for replacing damaged personal property totaled $31,000.   *Id.* at ¶31.

Nine months after the storm, Plaintiff's friend who works in the insurance business told Plaintiff that he should again attempt to pursue an insurance claim.   *Id.* at ¶24.   Taking that advice, Plaintiff contacted Defendant on August 11, 2015.   *Id.*   This time, Defendant sent an engineer to inspect the damage to Plaintiff's property.   *Id.*   Nonetheless, on September 4, 2015, Defendant sent Plaintiff a letter denying his claim.   *Id.* at ¶25.   The denial letter stated that "[t]he claim was not reported promptly and documentation of the cause of loss and damages is not available for review."   *Id.* at ¶27; ECF No. 1-2.   The denial letter did not include a claim number, *id.* at ¶32,  nor did it inform Plaintiff that he had a right to dispute the denial with the New York Department of Financial Services.   *Id.*

After Plaintiff received Defendant's denial letter, Plaintiff's attorney contacted Defendant and requested that it reverse its coverage decision.   *Id.* at ¶35.   At first, Defendant refused.   *Id.* But after some correspondence between the parties, Defendant withdrew its denial and reopened its investigation of the damage to Plaintiff's property.   *Id.* at ¶¶35-37.   Defendant demanded that Plaintiff submit to an examination under oath and produce a number of documents.   *Id.*   Plaintiff agreed to submit to an examination that was limited to the subject to timeliness, but Defendant refused to limit its investigation.   *Id.* at ¶38.   At that point, Plaintiff initiated this action.   ECF No. 1.

## II.     Material Undisputed Facts

The parties agree that Plaintiff notified Defendant of the damage to his home and that Defendant conducted an investigation and denied coverage.   ECF Nos. 10-7, ¶¶8-9; 17, ¶¶8-9. They further agree that, in its denial letter, Defendant stated that it had "concluded its

investigation of [Plaintiff's] loss," explained that "[t]he claim was not reported promptly and documentation of the cause of loss and damages is not available for review," and noted that coverage was conditioned on Plaintiff fulfilling his duties to notify Defendant promptly of a loss, protect and repair the property, and submit to Defendant's investigation.  ECF Nos. 10-7, ¶¶10-12; 17, ¶¶10-12.

The parties disagree about the cause of the damage, the date of notification, and the substance of Plaintiff's conversation with Defendant's claims representative.  ECF Nos. 10-7, ¶¶2-7; 17, ¶¶2-7.  Defendant disputes whether the damage to Plaintiff's property was caused by the weight of snow and ice, when the electrical fires occurred, and the extent of the loss.  ECF No. 17, ¶2.  Further, Defendant disputes whether Plaintiff first reported the loss on December 1, 2014.  *Id.* at ¶3-6.  Finally, Defendant disputes that Plaintiff acted on the advice of its claims representative when Plaintiff refrained from formally pursuing his claim until August 11, 2015.  *Id.* at ¶7.

## DISCUSSION

### I.      Defendant's Motion to Dismiss

Defendant has moved to dismiss seven of Plaintiff's claims.  ECF No. 7.  Defendant argues that Plaintiff's complaint fails to state a claim of fraud, constructive fraud, negligent misrepresentation, violation of New York General Business Law § 349, punitive damages, consequential damages, and injunctive relief.  *Id.*

To succeed on a motion to dismiss under Rule 12(b)(6), the defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  A complaint is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is

liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

For the reasons discussed below, Defendant's motion to dismiss Plaintiff's constructive fraud, negligent misrepresentation, punitive damages, and New York General Business Law claims is granted and those claims are dismissed. Defendant's motion to dismiss as it relates to Plaintiff's fraud claim, request for injunctive relief, and claim for consequential damages is denied.

### a.  Fraud

Defendant first moves to dismiss Plaintiff's claim of fraud. To state a claim of fraud under New York law, a plaintiff must allege that the defendant (1) knowingly, (2) made a statement of material fact, (3) that was false, (4) on which the plaintiff justifiably relied, (5) to the plaintiff's injury. *Apace Commc's, Ltd. V. Burke*, 522 F. Supp. 29 509, 514 (W.D.N.Y. 2007) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). In alleging those elements, in addition to meeting the requirements of 12(b)(6), the plaintiff must satisfy heightened pleading requirements. FED. R. CIV. P. 9(b). Rule 9(b) requires the plaintiff to "state with particularity" the circumstances constituting fraud and "allege[] generally" intent, knowledge, and other conditions of a person's mind. *Id.* In other words, "Rule 9(b) places two

further burdens on fraud plaintiffs—the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state." *Loreley Financing (Jersey) No. 3 Ltd. V. Wells Fargo Securities, LLC*, 797 F.3d 160, 171 (2d Cir. 2015). In pleading the circumstances of the fraud, the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 511 (S.D.N.Y. 2016) (quoting *DiMuro v. Clinique Labs, LLC*, 572 Fed. App'x 27, 30 (2d Cir. 2014). Regarding the Defendant's mental state, the plaintiff must "plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Stephenson v. PricewaterhouseCoopers, LLP*, 482 Fed. Appx. 618, 622 (2d Cir. 2012) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).

Defendant claims that Plaintiff has failed to satisfy both Rule 9(b) requirements. First, Defendant claims that Plaintiff has failed to specify a fraudulent statement. ECF No. 7, 5. Second, Defendant claims that, to the extent that Plaintiff has identified a fraudulent statement, Plaintiff has not sufficiently alleged fraudulent intent. *Id.* at 5. The Court disagrees. Plaintiff has alleged the circumstances of the fraud with sufficient specificity and has pled a factual basis which gives rise to a strong inference of fraudulent intent.

### i. Fraudulent Statement

To begin, Defendant claims that Plaintiff's allegations of fraud should be dismissed because Plaintiff "fails to allege exactly what USAA's representative said." ECF No. 7, 5. Rule 9(b) does require a fraud plaintiff to specify the allegedly fraudulent statements. *See Minnie Rose*, 169 F. Supp. 3d at 511. But whether a plaintiff has satisfied Rule 9(b)'s requirements is necessarily context-specific: compliance "depends upon the nature of the case, the complexity or

simplicity of the transaction or occurrence, the relationship between the parties, and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 522 (S.D.N.Y. 2015) (internal quotations marks omitted). Indeed, Rule 9(b)'s requirements are designed "to provide a defendant with sufficient information to formulate a defense," *Dolan v. Fairbanks Capital Corp.*, No. 03-CV-3285, 2008 WL 4515935, at *8 (E.D.N.Y. Sept. 30, 2008), not "to require pleading with total insight." *In re Pharm. Indust. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 208 (D. Mass. 2004). "It is only common sense that the sufficiency of the pleadings under Rule 9(b) may depend upon the nature of the case." *Reynolds*, 136 F. Supp. 3d at 522.

In *Reynolds*, the plaintiff alleged that the defendant made two fraudulent statements during a telephone conversation between the plaintiff and a sales representative of the defendant. The plaintiff alleged that the representative told him that "a family member or friend purchased [a Lifewatch] device" for him and that the plaintiff "would not be charged a monthly fee until the device was activated." *Id.* at 522. The plaintiff's pleadings described—but did not quote—the substance of those allegedly fraudulent statements. *Id.* at 522. Further, the plaintiff's pleadings did not provide the date, time, duration, or phone number of the call. *Id.* On that basis, the defendants argued that the plaintiff failed "to specify the statements that he contend[ed] were fraudulent." *Id.* at 522. The court disagreed. Because the plaintiff clearly described the allegedly fraudulent statements and because of the nature of the plaintiff's relationship with the defendant, the court found that the plaintiff's pleadings satisfied Rule 9(b). *Id.* at 522-24.

In this case, Plaintiff has described the allegedly fraudulent statements with sufficient specificity. Plaintiff described three statements that he claims were fraudulent: (1) that "his

claim would be denied," (2) that "it would not be in his best interest to pursue the claim, and (3) that "the damage to his home would not be covered under the Policy."  ECF No. 1, ¶41.  Plaintiff has also provided the exact date, time, and duration of that call.  *Id*. at ¶16.  Additionally, he has provided the number that he dialed to reach the claims representative.  *Id*.  To be sure, Plaintiff has not provided a transcript of the conversation; however, given that Plaintiff was a customer calling an insurance agency to inquire about coverage for damage to his home, paraphrasing the material substance of the statements is enough.  It is enough to provide Defendant with "sufficient information to formulate a defense" and to satisfy Rule 9(b)'s particularity requirements.  *Dolan*, 2008 WL 4515935, at *8.

## 2.  Fraudulent Intent

Next, Defendant claims that Plaintiff has not sufficiently pled fraudulent intent.  ECF No. 7, 5.  Although Rule 9(b)'s heightened specificity requirement does not apply to the intent element of a fraud claim, a plaintiff's allegations of fraud must "give[] rise to a strong inference of fraudulent intent."  *Loreley*, 797 F.3d at 176 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  To determine whether a plaintiff's allegations give rise to a strong inference of fraudulent intent, a court must compare "plausible, nonculpable explanations for the defendant's conduct" against "inferences favoring the plaintiff."  *Tellabs*, 551 U.S. at 324.  The plaintiff's allegations are sufficient "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.*

First, Defendant argues that Plaintiff has not sufficiently alleged that the claims representative knew that his statement that Plaintiff's claim "would be denied" was false.  *Id.*  The Court disagrees.  The conclusion that the claims representative knew that that statement was

false is cogent and at least as compelling as any other inference that could be drawn from Plaintiff's allegations. Plaintiff alleges that the chimney on his home "collapsed under the weight and pressure of nearly five to seven feet of ice and snow." ECF No. 1, ¶11. Twelve days later, Plaintiff continues to allege, he called Defendant "to pursue a claim for damages." *Id.* at ¶16. Plaintiff alleges that, during that phone call, he notified a claims representative of the loss—namely, that the chimney on his home collapsed under "the weight of snow and ice." *Id.* at ¶17. Armed with that information, Plaintiff alleges that the claims representative told him that his claim "would be denied." *Id.* at ¶17. According to Plaintiff, that happened within the course of a 14-minute telephone call. *Id.* at ¶16. Notably, Plaintiff's insurance policy covers the "collapse" of all or part of a covered property when the "collapse" is caused by, among other things, the "[w]eight of ice, snow or sleet." ECF No. 1-1, 22, 30, 35. Given that Plaintiff's alleged description of the cause of damage is nearly identical to the description of damage which the policy covers, Plaintiff's allegation that the claims representative knew he was making a false statement when he said, on the spot, that that damage "would not be covered" is persuasive and at least as compelling as any competing inference.

Is it possible that there was some misunderstanding between Plaintiff and the claims representative, or that Plaintiff read more certainty into the claims representative's statements than the representative intended to convey? Certainly; however, Plaintiff also alleges that the claims representative's statements "made it clear to [him] that the damage to his home would not be covered." ECF No. 1, ¶17. Taking that allegation to be true, inferring knowledge of falsity into the claims representative's state of mind is just as compelling as inferring confusion into Plaintiff's.

Second, Defendant claims that, in any event, Plaintiff cannot satisfy the scienter requirement for the statement that Plaintiff's claim "would be denied" because the statement was not false:  Plaintiff's claim *was* denied.   ECF No. 7, 5; 18, 4.   Plaintiff alleges that the conversation with the claims representative took place twelve days after the storm.   ECF No. 1, ¶16.   Surely, at that time, Plaintiff's claim was not untimely.   Defendant's denial of Plaintiff's claim as untimely—ten months later—does not negate the possibility that the claims representative knowingly made a false statement when Plaintiff first reported the damage.  Indeed, Plaintiff's allegations give rise to a strong inference that the claims representative knew that damage resulting from the weight of snow and ice is the type of damage that is typically covered but nonetheless told Plaintiff that his claim would not be covered in an effort to discourage Plaintiff from filing the claim.

Finally, Defendant argues that the statement "it would not be in [Plaintiff's] best interest to pursue a claim" is an opinion, not a statement of fact, and for that reason it cannot be fraudulent.   ECF No. 7, 5-6.   That argument is incorrect.   "It has long been the law of New York that an expression of opinion may constitute actionable fraud."   *Magnaleasing, Inc. v. Staten Island Mall*, 428 F. Supp. 1039, 1042 (S.D.N.Y. 1977) (collecting cases).   When a person with greater knowledge, information, or expertise expresses an opinion to someone with less knowledge, information, or expertise, it "implies that the declarant knows facts which support that opinion and knows nothing which contradicts the statement."   *Id.* at 1043.   For that reason, "[t]he expression of an opinion or prediction which the declarant does not himself believe is a false statement of fact."   *Id.*   Here, Plaintiff alleges that the claims representative has "superior, unique, and specialized knowledge of matters relating to insurance coverage."   ECF No. 1, ¶20.  He also alleges that the claims representative told him it would not be in his best interest to

pursue a claim for the damage to his home, and that the claims representative knew that statement to be false.  ECF No. 1, ¶¶18, 43.  Consequently, Plaintiff has alleged facts sufficient to state a claim of fraud.

### b.  Constructive Fraud

Defendant next moves to dismiss Plaintiff's claim of constructive fraud.  The elements of a constructive fraud claim resemble those of a fraud claim.  *Apace Communications,* 522 F. Supp. 2d at 519.  The only difference is that, instead of proving that the defendant knew that the statement was false, the plaintiff must prove that the defendant had a confidential or fiduciary duty to the plaintiff.  *Id.*  To wit, to state a claim of constructive fraud under New York law, a plaintiff must allege that the defendant (1) made a statement of material fact, (2) that was false, (3) on which the plaintiff justifiably relied, (4) to the plaintiff's injury, (5) in the context of a fiduciary or confidential relationship.  *See id.*  A constructive fraud claim differs from an actual fraud claim in one other respect: a plaintiff alleging constructive fraud need not satisfy the heightened pleading requirements of Rule 9(b).  *See Sharp Int'l Corp. v. State St. Bank & Trust Co.*, 403 F.3d 43, 53-54 (2d Cir. 2005); *Maecker v. O'Reilly Media, Inc.*, 13-CV-0769, 2014 WL 5089558, at *4 (W.D.N.Y. Oct. 9, 2014).  That said, the plaintiff must still state a plausible claim for relief.  *Id.*

Defendant argues that Plaintiff has not sufficiently alleged the existence of a fiduciary or confidential relationship between the parties.  ECF No. 7, 7.  Plaintiff argues that his allegations illustrate the claims representative's "affirmative effort" to gain Plaintiff's trust, and that effort triggered a fiduciary relationship between Plaintiff and Defendant.  ECF No. 10-1, 9.  The Court agrees with Defendant.  To allege that a commercial transaction triggered a fiduciary or confidential relationship, a plaintiff must demonstrate "a high degree of dominance and

reliance." *@Wireless Enters., Inc. v. Al Consulting, LLC*, 05-CV-6176, 2006 WL 3370696, at \*8 (W.D.N.Y. Oct. 20, 2006) (quoting *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355 (N.Y. App. Div. 2004)) (internal quotation marks omitted).   When a plaintiff alleges a fiduciary or confidential relationship with an institutional defendant, the plaintiff "must come forward with facts demonstrating that his or her relationship with the institution was somehow unique or distinct from the institution's relationship with others generally."   *Robare v. Fortune Brands, Inc.*, 39 A.D.33 1045, 1047 (N.Y. App. Div. 2007).   Indeed, unless the plaintiff offers a reason to depart from the general rule, *see, e.g.*, *Meagher v. Metro. Life Ins. Co.*, 119 Misc. 2d 615, 616 (N.Y. Sup. Ct. June 3, 1983) (finding the defendant exploited the plaintiff's age and poor state of health and that, in combination with the imbalance of information between the parties, gave rise to a fiduciary relationship), "no special relationship of trust or confidence arises out of an insurance contract."   *Batas v. Prudential Ins. Co. of Am.*, 281 A.D.2d 260, 264 (N.Y. App. Div. 2001) (finding the defendant's superior knowledge of their product and promotional material labeling the insurance company as a "trusted name" did not give rise to a fiduciary relationship).

Here, Plaintiff alleges that a claims representative "told [him] that his claim would be denied," said that though the damage to his garage might be covered, "the damage to his home would not be covered," and "advised [him] that due to the high deductible under the Policy ($8,040.00), it would not be in [his] best interest to pursue a claim at that time."   ECF No. 1, ¶¶16-18.   Plaintiff relies on *Batas* in arguing that those statements constitute an "affirmative effort" to gain his trust and confidence, which triggered a fiduciary relationship.   ECF No. 10, 8. Plaintiff misapplies that precedent.   While the court in *Batas* acknowledged that the behavior of a representative could give rise to a fiduciary or confidential relationship, it was referring to the exploitive, overreaching behavior present in *Meagher*.   *Batas*, 281 A.D.2d at 264.   In *Meagher*,

the complaint alleged that the defendant told the plaintiff purchasing an immediate life annuity contract for $25,000 "was a suitable investment for her."  119 Misc. 2d at 616.  The plaintiff was 80-years-old and in poor health at the time.  *Id.*  She died 13 months later.  *Id.*  There is no such exploitive, overreaching behavior alleged here.  Plaintiff initiated the conversation with the claims representative, actively sought guidance on pursuing his claim, and the substance of their conversation was within the normal scope of an insurance company's relationship with the insured.  ECF No. 1, ¶16.  For these reasons, the claims representative's statements do not give rise to a "special relationship of trust or confidence."  *Id.*  Accordingly, Plaintiff's claim of constructive fraud is dismissed.

### c.  Negligent Misrepresentation

Defendant also moves to dismiss Plaintiff's claim of negligent misrepresentation.  To state a claim of negligent misrepresentation, a plaintiff must allege that (1) the defendant had a duty to give correct information, (2) the defendant negligently provided incorrect information, (3) the defendant knew that the plaintiff needed the information for a serious purpose, (4) the plaintiff intended to rely and act upon that information, and (5) the plaintiff reasonably relied on that information.  *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 21 (2d Cir. 2000).  In alleging those elements, the plaintiff must satisfy the heightened pleading standard of Rule 9(b).  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005).  That means a plaintiff alleging negligent misrepresentation must "state with particularity" the circumstances constituting the negligent misrepresentation.  FED. R. CIV. P. 9(b).

Defendant claims plaintiff has failed to allege facts that demonstrate a duty to give correct information.  ECF No. 7, 7.  In response, Plaintiff points to Defendant's superior knowledge of the Policy and the "financial advice" allegedly given to Plaintiff by the claims

representative.  ECF No. 10-1, 10-11.   The Court agrees with Defendant.  A duty to give correct

information arises out of a special relationship between the parties.  *Hydro*, 227 F.3d at 21.   In

determining whether a special relationship exists, courts consider three factors: "(1) whether the

speaker held or appeared to hold a unique or special expertise; (2) whether a special relationship

of trust or confidence existed between the parties; and (3) whether the speaker was aware of the

use to which the information would be put and supplied it for that purpose."  *Alley Sports Bar,*

*LLC v. SimplexGrinnel, LP*, 58 F. Supp. 3d 280, 291-92 (W.D.N.Y. 2014) (citing *Kimmel v.*

*Schaefer*, 89 N.Y.2d 257, 264 (1996)).[1]   Courts afford plaintiffs some flexibility in pleading

those factors: a plaintiff may "sparsely" plead special relationship of trust or confidence as long

as he or she "emphatically" alleges the other two factors.  *Eternity Global Master Fund*, 375

F.3d at 187.  Nonetheless, "the vast majority of arms-length commercial transactions, which are

comprised of casual statements and contacts, will not give rise to negligent misrepresentation

claims."  *Izquierdo v. Mondelez Int'l, Inc.*, 16-CV-4697, 2016 WL 6459832, at *8 (S.D.N.Y.

Oct. 26, 2016) (collecting cases).

　　Here, Plaintiff has sparsely pled two of the three elements.  Regarding the first factor,

Plaintiff alleges Defendant and its claims representative "possessed unique or specialized

expertise of insurance coverage for claims and losses to property under a homeowner['s] policy

of insurance in the State of New York" and "of the Policy that [Defendant] drafted and issues of

---

[1]　　Although courts uniformly consider these three factors, the weight assigned to each is inconsistent.
*Compare Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992) ("Under New York law, a plaintiff may
recover for negligent misrepresentation only where the defendant owes her a fiduciary duty."), *with AHW Inv.*
*P'ship v. Citigroup, Inc.*, 980 F.Supp.2d 510, 524 (S.D.N.Y. 2013) ("New York law requires the existence of a
special or privity-like relationship between the plaintiff and defendant for a successful negligent misrepresentation
claim.") (internal quotation marks omitted), *and Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of*
*N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) ("[A] sparsely pled special relationship of trust or confidence is not fatal to a
claim for negligent misrepresentation where the complaint emphatically alleges the other two factors . . . .").  *See*
*also Alley Sports Bar*, 58 F. Supp. 3d at 292 ("A thorough review of the relevant case law presents varied
interpretations as to what constitutes a special relationship to support a negligent misrepresentation claim under New
York law.").  That inconsistency need not be resolved here because Plaintiffs negligent misrepresentation fails under
even the most lenient test.

insurance coverage under the Policy." ECF No. 1, ¶¶55, 59. That is insufficient. Possessing general knowledge of an industry, without more, does not satisfy the unique or specialized expertise factor. *See Alley Sports Bar*, 58 F. Supp. 3d at 294 (finding a defendant's knowledge and expertise as a "licensed fire alarm contractor" not "unique or specialized experience" for the purposes of a negligent misrepresentation claim). Plaintiff does not allege that the claims representative possessed specific knowledge of the damage to his home or even that the claims representative held himself out as possessing such knowledge. Nor does Plaintiff allege that, in contacting the claims representative, he was seeking the advice of someone with particular expertise. To the contrary, Plaintiff alleges that he called a customer service number and spoke to the person that picked up the call. ECF No. 1, ¶16.

Regarding the second factor, Plaintiff alleges the claims representative told him "it would not be in his best interest to pursue the claim." *Id.* at ¶18. Plaintiff characterizes this as "financial advice" and argues that it demonstrates the degree of trust between the parties. ECF No. 10-1, 11. That argument is not persuasive. Negligent misrepresentation requires a closer degree of trust than that of an ordinary buyer and seller. *See Alley Sports Bar*, 58 F. Supp. 3d at 293. Plaintiff's allegations fail to suggest that this 14-minute conversation strayed categorically from an ordinary conversation between a representative of an insurance company and an insured.

In sum, Plaintiff does not allege facts that trigger a duty to disclose correct information. Even assuming Plaintiff has adequately alleged that the claims representative knew or should have known that the information he or she provided to Plaintiff was incorrect, that does not give rise to such a duty. Plaintiff failed to demonstrate that the relationship was anything more than a normal relationship between an ordinary buyer and seller. For that reason, Plaintiff's claim for negligent misrepresentation is dismissed.

### d.  New York General Business Law § 349

Defendant also moves to dismiss Plaintiff's claim under New York General Business Law § 349.  New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).  To state a claim for relief under this statute, a plaintiff must demonstrate "(1) acts or practices that are consumer-oriented; (2) that such acts or practices are deceptive or misleading in a material way; and (3) that [the] plaintiff has been injured by reason of those acts."  *Bartlett v. Nationwide Mut. Fire Ins. Co.*, No. 12-CV-435, 2013 WL 623497, at *2 (W.D.N.Y. Feb. 19, 2013).  Like constructive fraud claims, claims brought under N.Y. General Business Law § 349 are not subject to the heightened pleading requirements of Rule 9(b).  *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).  Nevertheless, Plaintiff must state a claim for relief that is plausible on its face.  *Id.*

Defendant argues that Plaintiff has not sufficiently alleged a consumer-oriented act or practice.  ECF No. 7, 13.  Plaintiff argues that his allegations demonstrate "a potential pattern of behavior."  ECF No. 10-1, 18.  The Court agrees with Defendant.  In determining whether an act or practice is consumer-oriented, courts consider three factors: (1) the amount of money at stake, (2) the nature of the contract, and (3) the relative level of sophistication of the parties.  *Interested Underwriters at Lloyd's of London Subscribing to Policy # 9913610118 v. Church Loans & Invs. Trust*, 432 F. Supp. 2d 330, 332 (S.D.N.Y. 2006) (citing *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320-21 (1995)).  In considering those factors, "[c]ourts almost uniformly find that disputes between policy holders and insurance companies concerning the scope of coverage are nothing

more than private[,] contractual disputes that lack the consumer impact necessary to state a claim." *Bartlett*, 2013 WL 623497, at *3.

Here, Plaintiff alleges, "[u]pon information and belief," that Defendant "does and will continue to make on-the-spot coverage determinations over the phone without fully and fairly investigating claims" and "may and likely will continue to . . . omit required information from its correspondence with its members and policy holders." ECF No. 1, ¶¶110-11. To sufficiently plead a consumer-oriented act or practice, a plaintiff must provide factual allegations with some specificity. *Bartlett* 2013 WL 623497, at *4. Indeed, "conclusory allegations, even of the existence of a claim settlement policy designed to decide the public, are not sufficient to state a claim under § 349 in the absence of factual allegations in support thereof." *Id.* Allegations made "upon information and belief" are not enough. *Id.* For that reason, Plaintiff has not sufficiently demonstrated that a consumer-oriented act or practice. Accordingly, Plaintiff's § 349 claim is dismissed.

### e. Punitive Damages

Defendant next moves to dismiss Plaintiff's request for punitive damages. Generally, punitive damages are not available in contract disputes. *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 88 (2d Cir. 2005); *see also Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y. 2d 603, 613 (1994) ("Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights."). But where such a case involves allegations of fraud, a "high degree of moral turpitude," "such wanton dishonesty as to imply a criminal indifference to civil obligations," and conduct "aimed at the public generally," punitive damages are available. *Rocanova*, 83 N.Y. 2d

at 613. Even still, that availability is limited. An award of punitive damages in this context is an "extraordinary remedy" that will be available "only in a limited number of instances." *Id.* at 944.

First, Defendant argues that Plaintiff's claim for punitive damages must be dismissed because New York law does not provide an independent cause of action for punitive damages. ECF No. 7, 10. Plaintiff argues that, because his claim for punitive damages arises out of conduct that is independently actionable, the claim is allowed. ECF No. 10-1, 12. The Court agrees with both parties, in part. Punitive damages are not an independent cause of action. *See Martin v. Dickson*, 100 Fed. Appx. 14, 16 (2d Cir. 2004) ("Plaintiff's third cause of action for punitive damages was also properly dismissed; there is no separate cause of action in New York for punitive damages.") (citing *Paisley v. Coin Device Corp.*, 5 A.D.3d 748, 749 (N.Y. App. Div. 2004); *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013) ("[P]unitive damages are a remedy and not a separate cause of action."). But where the allegations underlying an improperly pleaded claim for punitive damages repeat the substance of the allegations underlying legitimate causes of action, "it is appropriate to construe the claim for punitive damages as an additional prayer for relief." *Srubnyj v. City of New York*, No. 85-CV-2770, 1990 WL 83477, at *1 (S.D.N.Y. 1990). The allegations underlying Plaintiff's claim for punitive damages mirror those underlying his other causes of action. For that reason, the Court will construe the punitive damages claim as a prayer for relief.

Second, Defendant argues that Plaintiff has not alleged facts to support the conclusion that the alleged violation was part of a pattern of conduct directed at the public generally.[2] ECF Nos. 7, 11; 18, 8. In response, Plaintiff claims the alleged conduct is "unlikely to be constrained solely to the loss reported by [Plaintiff], and such actions likely occur, have occurred, or will

---

[2] Defendant also argues that Plaintiff's allegations failed to demonstrate that the conduct was gross, morally reprehensible, or wanton. ECF No. 7, 10. Because Plaintiff has not sufficiently alleged a pattern of conduct directed at the public, there is no need to address this argument.

occur, involving other policy holders and members." ECF No. 10-1, 13-14.  The Court agrees

with Defendant.  Plaintiff alleges, "[u]pon information and belief," that Defendant's "on-the-spot

coverage determinations" and recommendations "that its members and policy holders refrain

from pursuing claims for damage and covered losses" affect "[Defendant]'s members and policy

holders."[3]  ECF No. 1, ¶68.  But Plaintiff provides no facts to move that allegation from possible

to plausible.  "To sustain its claim for punitive damages, the plaintiff must . . . set forth sufficient

evidentiary allegations of ultimate facts pointing to a fraudulent scheme upon the public."

*Eccobay Sportswear, Inc. v. Providence Wash. Ins. Co.*, 585 F. Supp. 1343, 1345 (S.D.N.Y.

1984) (citing *Holoness Realty Corp. v. N.Y. Property Ins. Underwriting Ass'n*, 75 A.D.2d 569,

570 (N.Y. App. Div. 1980)) (internal quotation marks omitted).  Plaintiff has not alleged facts

that demonstrate the alleged fraud was aimed at the public generally.  On that basis, the request

for punitive damages is dismissed.

### f.  Consequential Damages

Defendant also asks this court to dismiss Plaintiff's claim for consequential damages.

Consequential damages are those that flow indirectly from a breach of contract.  *See generally*

RESTATEMENT (SECOND) OF CONTRACTS § 351 (1981).  In New York, such damages are only

available if the parties contemplated them at or before the time of contracting.  *See Schonfeld v.*

*Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) (citing *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395,

403 (1993)).  That is because the breaching party is liable for only "those risks foreseen or which

should have been foreseen at the time the contract was made."  *Ashland*, 82 N.Y.2d at 403.  In

determining whether the parties contemplated consequential damages, courts must "take a

common sense approach."  *Schonfeld*, 218 F.3d at 172 (citing *Kenford Co. v. Cnty. of Erie*, 73

---

[3]       Plaintiff also appears to seek punitive damages in connection with his N.Y. Gen. Bus. Law § 349 claim.
*See* ECF No. 1, ¶67.  Because that claim does not survive this Order, there is no need to address whether the alleged
conduct underlying that cause of action justifies an award of punitive damages.

N.Y.2d 312, 319 (1989)) (internal quotation marks omitted).   In particular, courts should consider "the nature, purpose and particular circumstances of the contract."  *Kenford*, 73 N.Y.2d at 319.   Additionally, courts should consider "what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed."  *Id.*

Defendant argues that Plaintiff has failed to allege that the parties contemplated that Plaintiff would take out a second mortgage on his property to cover the cost of repairs to his home.  ECF No. 7, 12.  Plaintiff claims that the Court should not consider whether the parties contemplated that Plaintiff would take out a second mortgage specifically, but rather the Court should consider whether the parties contemplated that Plaintiff would incur additional expenses generally if his claim was wrongfully denied.  ECF No. 10-1, 16-17.  The Court agrees with Plaintiff.  New York law does not require that the breaching party foresaw "the breach itself or the particular way the loss occurred."  *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 193 (2008).  Rather, it is only necessary that the loss is "foreseeable and probable." *Id.*

An insurance company should reasonably foresee that it will be liable for the cost of borrowing money to cover expenses that the insurance company wrongfully refuses to cover. The purpose of an insurance contract is not "just to receive money."  *Bi-Economy*, 10 N.Y.3d at 195.   Undoubtedly, an insured enters into an insurance agreement to avoid bearing the unexpected costs of an unfortunate event.  *Id.*  But more importantly, an insured enters into an insurance agreement to protect his or her business, health, or—as in this case—home.  *See, e.g.*, *id.* (noting that the purpose of business interruption insurance is not only to recoup actual losses but also to avoid the collapse of the business in the meantime); *see also Woodworth v. Erie Ins.*

*Co.*, 743 F. Supp. 2d 201, 217 (W.D.N.Y. 2010) (noting that the purpose of homeowner's insurance is not only to insure that the plaintiff's "house would be rebuilt or replaced promptly" but also to insure that the plaintiff would have a place to live in the meantime).  Thus, "the very purpose" of homeowner's insurance would make it reasonably foreseeable that, if an insurance company breached its obligation to pay for repairs to the insured's home, it would be liable for damages the insured incurred in making those repairs—including additional, threshold expenses the insured might have had to incur to have been in the financial position to make the repairs in the first place.  *Cf. Bi-Economy*, 10 N.Y.3d at 195 ("When an insured in such a situation suffers additional damages as a result of an insurer's excessive delay or improper denial, the insurance company should stand liable for these damages.").

Applying that logic here, Defendant should have foreseen that it would be liable for costs Plaintiff incurred in borrowing money to make his home habitable.  Taking Plaintiff's allegations as true, Plaintiff entered into a homeowner's insurance agreement with Defendant.  ECF No. 1, ¶3.  Defendant breached its contract with Plaintiff by denying Plaintiff's claim for damage to his property.  ECF No. 1, ¶93.  As a result, Plaintiff was forced to take out a second mortgage on his property "to finance necessary repairs" and "replace damage or destroyed personal property."  ECF No. 1, ¶95.  Considering the nature, purpose and particular circumstances of the agreement, the threshold costs Plaintiff incurred to put himself in the financial position to repair his home should have been reasonably contemplated by the parties.  *See Bi-Economy*, 10 N.Y.3d at 195.  Defendant's motion to dismiss Plaintiff's claim for consequential damages is therefore denied.

### g.  Injunctive Relief

Finally, Defendant moves to dismiss Plaintiff's request for injunctive relief.  Plaintiff seeks injunctive relief "enjoining [Defendant] from demanding that [Plaintiff] satisfy, submit to,

or otherwise comply with any terms or conditions of the Policy as a condition to providing indemnity for the damage to [Plaintiff]'s property."  ECF No. 1, ¶82.  Defendant challenges that request on three grounds.

First, Defendant argues that Plaintiff's claim for injunctive relief must be dismissed because injunctive relief is not a cause of action.  ECF No. 7, 11.  In response, Plaintiff acknowledges his inartful pleading and clarifies that his claim for injunctive relief should be viewed as a request for injunctive relief, part and parcel with his breach of contract claim.  ECF No. 10-1, 14.  Like Plaintiff's claim for punitive damages, Defendant is technically correct.  A request for an injunction is not a separate cause of action.  *See Ray v. Samsung Elecs. Am., Inc.*, No. 15-CV-8540, 2016 WL 3406127, at *8 (S.D.N.Y. June 17, 2016).  But that does not mean that this Court must dismiss Plaintiff's request.  *Pace v. Schwartz*, 680 F. Supp. 2d 591, 594 (S.D.N.Y. 2010) ("The fact that plaintiffs have pleaded their request for injunctive relief as a separate claim rather than as part of the prayer for relief in no way disentitles them to seek injunctive relief.").  The Court declines Defendant's request to prioritize formality over efficiency.

Second, Defendant argues that Plaintiff's request for injunctive relief must be dismissed because it is redundant: "the declaratory relief requested in the Seventh Claim for Relief provides an adequate remedy."  ECF No. 7, 11.  The Court disagrees.  While Plaintiff's request for declaratory relief and his request for injunctive relief are closely related, the latter is broader than the former.  *See* ECF No. 1, ¶¶80, 82.  Plaintiff's request for declaratory relief asks this Court to declare that Defendant's denial letter bars Defendant from reopening its investigation of Plaintiff's purported loss.  ECF No. 1, ¶80.  In contrast, Plaintiff's request for an injunction asks this Court to preclude Defendant from conditioning coverage of Plaintiff's claim on his further

compliance with *any* terms or conditions of the Policy.  ECF No. 1, ¶82.  Thus, Plaintiff's request for declaratory relief does not fully cover the relief requested through Plaintiff's request for an injunction.

Third, Defendant argues that Plaintiff "has not pleaded facts" entitling him to the injunctive relief requested.  ECF No. 18, 8-9.  Specifically, Defendant argues that "[e]ven if [Defendant] breached the insurance contract by its denial of coverage based on untimely notice . . . , that breach would not release Plaintiff from his obligation to comply with all terms and conditions of the [P]olicy."  ECF No. 18, 9.  It is axiomatic that one party's material breach excuses the other party's obligation to further perform.  *Frank Felix Assoc., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (citing *Babylon Assocs. v. Cnty. of Suffolk,* 101 A.D.2d 207, 215 (N.Y. App. Div. 1984) (citing *Callanan v. Powers,* 199 N.Y 268, 283 (1910)); *see also NAW Elecs., Inc. v. Transtech Elecs. PTE Ltd*, 262 F. Supp. 2d 134, 145 (S.D.N.Y. 2003) ("Under New York law, when one party has committed a material breach of a contract, the non-breaching party is discharged from performing any further obligations under the contract, and the non-breaching party may elect to terminate the contract and sue for damages.").  Because Plaintiff's breach of contract claim stands, so too does the request for injunctive relief flowing from that claim.

## II.    **Plaintiff's Motion for Partial Summary Judgment**

After responding to Defendant's Motion to Dismiss, Plaintiff filed his Cross-Motion for Partial Summary Judgment.  ECF No. 10-1.  Plaintiff moves for summary judgment on his claim for declaratory relief as it relates to the issues of coverage and timeliness.  ECF No. 10, 20.  In doing so, Plaintiff asks the Court to declare two things:  First, Plaintiff asks this Court to declare that Defendant's denial of his claim was improper.  *Id.*   Second, Plaintiff asks this Court to

declare that Defendant's denial of Plaintiff's claim precludes Defendant from asserting any additional grounds for denying coverage beyond those articulated in Defendant's denial letter. *Id.*

Although a motion for summary judgment may be filed "at any time until 30 days after the close of all discovery," FED. R. CIV. P. 56(b), summary judgment is generally not appropriate until after some discovery has occurred. *Nelson v. Deming*, No. 6:13-CV-06252, 2015 WL 6452386, at *5 (W.D.N.Y. Sept. 30, 2015). That is because the purpose of summary judgment is to allow for the disposition of a case after adequate time for discovery has elapsed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Indeed, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). In those rare cases, it is evident from the face of the complaint that discovery would be futile. *See, e.g.*, *Nelson*, 2015 WL 6452386, at *5 (granting defendants' pre-discovery motion for summary judgment because "[t]he facts contained in the attachments to [p]laintiff's own complaint contradict[ed] his claim"); *Parra v. Wright*, No. 11-CV-6270, 2013 WL 6669235, at *7 (W.D.N.Y. Dec. 18, 2013) (granting defendants' pre-discovery motion for summary judgment on exhaustion grounds because the facts were "not disputed, and it does not appear that any amount of discovery would change the outcome").

Plaintiff filed his motion for summary judgment before the parties commenced discovery. Indeed, Plaintiff filed his motion for summary judgment before Defendant filed its answer to the complaint. Despite that posture, Plaintiff has not explained why this is one of those rare cases where summary judgment should be awarded at this stage. For that reason, and the reasons discussed below, Plaintiff's Motion is denied.

### a.  Improper Denial

First, Plaintiff claims that he is entitled to a declaratory judgment that Defendant improperly denied his claim because there is no genuine issue of material fact as to whether he notified Defendant of the loss within one year.  ECF No. 10-1, 20.  That argument fails for two reasons.

For one thing, the Policy does not define notification within one year as prompt notification.  Although the Policy states that Defendant "will not provide any coverage for [the insured's] loss if [the insured] fails to notify [Defendant] about the loss within one year after the loss actually occurs," it does not state the inverse—namely, that if the insured notifies Defendant of the loss within one year it *will* be considered timely.  ECF No. 1-1, 20.  Even though there is no genuine dispute that Plaintiff notified Defendant of the loss within one year, it is possible that notification within one year is not considered prompt.  Plaintiff argues that principles of contract interpretation require the Court to read that clause in his favor.  ECF No. 10-1, 23.  But summary judgment is proper in a contract dispute only if the contract is wholly unambiguous.  *Compagnie Financiere de CIC et de L'Union Europeene v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000).  Although the Court "may resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning is so one-sided that no reasonably person could decide the contrary," the parties here have not yet had an opportunity to obtain evidence through discovery.  *Id.*

Even assuming that notification within one year is considered prompt under the terms of the Policy, a declaratory judgment that the Defendant's denial was improper is still not warranted.  It is possible that Defendant denied Plaintiff's claim because Plaintiff failed to "[k]eep an accurate record of repair expenses."  ECF Nos. 1-1, 41; 10-7, ¶11; 17, ¶11.  Plaintiff

alleges that he "has kept records of his damages and expenses." ECF No. 1, ¶31. But he does not indicate that he delivered those records to Defendant. In contrast, Plaintiff acknowledges that Defendant requested records when it reopened its investigation and that Plaintiff refused to comply. ECF No. 1, ¶¶37-39. More to the point, it cannot be said based on the face of the complaint that discovery would be futile in this regard. For that reason, it is too early in the course of litigation to declare that, as a matter of law, Defendant's initial denial of Plaintiff's claim was improper.

### b. Waiver

Second, Plaintiff claims that he is entitled to a declaratory judgment that Defendant waived all grounds for denying coverage other than those articulated in its denial letter. ECF No. 10-1, 20. The Court disagrees. Under New York law, an insurer may waive grounds for denial not raised in communications denying coverage. *See, e.g.*, *State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991) (citing *Albert J. Schiff Assocs. v. Flack*, 51 N.Y.2d 692, 698 (1980)). Having said that, some grounds for denial cannot be waived. *See, e.g.*, *Juliano v. Health Maint. Org. of N.J.*, 221 F.3d 279, 288 (2d Cir. 2000) (finding the parameters of the underlying coverage, as opposed to policy conditions like timeliness, cannot be waived); *see also Albert J. Schiff*, 51 N.Y.2d at 87 (noting that waiver cannot be used to extend coverage beyond what is actually covered under the terms of the insurance policy). At this stage, it is not clear whether Defendant will raise any additional grounds for denial, what those grounds would be, or whether those grounds could be waived. Thus, it cannot be said that Defendant waived all grounds for denial beyond those addressed in its denial letter. Plaintiff is welcome to renew his waiver argument if and when Defendant raises new grounds for denying coverage. But at this

point, the Court cannot declare as a matter of law that Defendant is precluded from doing so.  For these reasons, Plaintiff's Motion for Summary Judgment is denied.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 7) is GRANTED in part and DENIED in part.  Plaintiff's Motion for Partial Summary Judgment ECF No. 10) is DENIED WITHOUT PREJUDICE.


IT IS SO ORDERED.

Dated: March 6, 2017
      Rochester, New York

                                      _____

                                      HON. FRANK P. GERACI, JR.
                                      Chief Judge
                                      United States District Court